UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARLOS MEJIA DIAZ,<br><br>　　　　Petitioner,<br><br>　　　v.<br><br>KRISTI NOEM, SAMUEL OLSON, PAMELA BONDI, US DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, and WARDEN,<br><br>　　　　Respondents. | CAUSE NO. 3:25-CV-960-CCB-SJF |

## OPINION AND ORDER

Immigration detainee, Carlos Mejia Diaz, by counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, alleging he is detained in violation of the laws and Constitution of the United States. ECF 1. Respondents have filed a response, and Mejia Diaz has replied. ECF 19, ECF 20. The petition is ready to be decided.

## A. FACTS

According to immigration records provided by Respondents, (ECF 19-2), Mejia Diaz is a citizen of Honduras who entered the United States without inspection in 2001 and settled in Indianapolis, Indiana. On September 14, 2011, he was arrested by Indianapolis Immigration and Customs Enforcement/ Enforcement and Removal Operations (ICE/ERO) and served a Notice to Appear to begin removal proceedings. He was then released on an Order of Recognizance pending removal proceedings. Mejia

Diaz's removal proceedings were held on June 18, 2013, and were administratively closed.[1] He filed a Motion to Recalendar to place the case back on the immigration court's active calendar, which was granted on January 20, 2015. A hearing is scheduled for July 8, 2027.

Mejia Diaz has been married to a Lawful Permanent Resident of the United States for more than ten years. He has two children who are United States citizens and one child who is a lawful permanent resident. A Petition for Alien Relative was filed on his behalf on January 22, 2024, and it remains pending. Mejia Diaz applied to United States Citizen and Immigration Services (USCIS) to Register as a Permanent Resident or Adjust Status. USCIS administratively closed the application on July 9, 2024.

On November 9, 2025, Mejia Diaz was arrested by Indiana State Police for driving while intoxicated (DWI). Immigration and Customs Enforcement (ICE) lodged a detainer with the Marion County Sheriff's Department, and when Meija Diaz posted a $500 cash bond on the criminal charge, he was turned over to ICE custody on November 10, 2025. The prosecutor's office later chose not to prosecute the DWI charge. On November 11, 2025, ICE executed an administrative arrest warrant for Mejia Diaz.[2]

---

[1] In 2013, administrative closure would "temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (BIA 2012). It was an option used "to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Id.* In 2018, the Board of Immigration Appeals severely restricted immigration judges' authority to administratively close cases. *See Matter of Castro-Tum*, 27 I. & N. Dec. 271, 271 (2018). But the process for administratively closing a case was explicitly added to the Code of Federal Regulations in 2024. *See* 8 C.F.R. § 1003.18(c); Efficient Case and Docket Management in Immigration Proceedings, 89 FR 46742-01.

[2] Respondents state in their brief that Mejia Diaz was scheduled to appear before an immigration judge on December 10, 2025. ECF 19 at 4. But that is not confirmed by the immigration records or by Mejia Diaz in his response.

Mejia Diaz is currently being held at Miami Correctional Facility. According to Respondents, he is being held as an "applicant for admission" under 8 U.S.C. § 1225(b)(2), a statute that requires mandatory detention while a noncitizen's removal proceedings are pending, without the possibility of being released on bond. Mejia Diaz argues that he is improperly classified under § 1225(b)(2). He challenges a recent policy shift in which ICE classifies all noncitizens who were not lawfully admitted as subject to § 1225(b)(2), whether they were apprehended at the border or in the interior of the United States. *See In re Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (concluding immigration judges lack discretion to grant bond to a detained noncitizen who entered without inspection because all are detained under § 1225 and its mandatory detention scheme, which doesn't allow for bond or parole). He argues there is no basis for his detention and asks for his immediate release, or, in the alternative, a bond hearing under § 1226(a).

## B. SUBJECT MATTER JURISDICTION

In their response, Respondents first argue that this court lacks subject matter jurisdiction over Mejia Diaz's petition because various provisions in the Immigration and Nationality Act (INA) strip this court of jurisdiction over it. The court has an independent duty to ensure that subject matter jurisdiction exists in every case. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) ("[F]ederal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction."). Therefore, before turning to the

3

merits of the petition, the court will consider whether it has jurisdiction over the petition.

*1. 8 U.S.C. § 1252(e)(3)(A)(ii)*

Respondents first argue that 8 U.S.C. § 1252(e)(3)(A) directs that all claims involving § 1225(b) must be filed in the District of Columbia, and therefore this court lacks jurisdiction to decide the petition. Section § 1252(e)(3), as relevant here, says:

> **(3) Challenges on validity of the system**
>
> **(A) In general**
>
> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—
>
> . . .
>
> **(ii)** whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3). Respondents argue that under this section, Mejia Diaz must bring his petition in the District of Columbia because it challenges his detention under § 1225(b)(2)(A). ECF 19-1 at 7. Mejia Diaz counters that § 1252(e)(3) applies only to facial or systemic challenges to the constitutionality or legality of the expedited removal system or its implementing regulations, and does not foreclose individualized habeas petitions challenging whether a particular petitioner fits the statutory criteria to be detained under § 1225(b). ECF 20 at 7. In addition, he argues that by its plain language, § 1252(e)(3) is limited to § 1225(b) determinations—that is, orders of removal, referrals for asylum, referrals for proceedings that concern applicants for admission, or the

4

implementation of the expedited removal procedures—which do not include whether Mejia Diaz is properly characterized as falling under § 1225(b)(2).

Respondents miss the point of Mejia Diaz's claim. He is arguing that § 1225(b)(2) does not apply to him; he is not challenging whether it is lawful to detain noncitizens who properly fall under § 1225(b)(2). This court has jurisdiction to determine whether it has jurisdiction. *See Ali v. Ashcroft,* 395 F.3d 722, 726–27 (7th Cir. 2005). This includes a determination whether § 1225(b) properly applies to Mejia Diaz. If the court determines Mejia Diaz falls under § 1225(b), then the court would turn to whether § 1252(e)(3) would apply.

Respondents also argue that Mejia Diaz is challenging the Department of Homeland Security's (DHS) determination that § 1225(b)(2) applies to noncitizens who entered the United States without inspection, and therefore is seeking judicial review of "a written policy or guideline implementing section 1225(b)," putting this case squarely in the middle of § 1252(e)(3)(A)(ii). However, Respondents don't identify a particular written policy or guideline that controls here. Mejia Diaz, in his petition, refers to a July 8, 2025, policy change ICE issued in coordination with the Department of Justice, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." ECF 1 at ¶¶ 27-28. But that non-public memo, available only as screenshots of the internal memo published by an immigration bar association, *see* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Dec. 16, 2025), is not a written policy or guideline as contemplated by § 1252(e)(3)(A)(ii). Nor could any decision of the

5

BIA adopting the same position be considered written policy or guidance because the BIA cannot make policy. *See Ren v. Gonzales*, 440 F.3d 446, 448 (7th Cir. 2006) ("[T]he Board of Immigration Appeals does not have authority to promulgate rules or policies other than for its internal operations.").

*2. 8 U.S.C. § 1252(g)*

Respondents next argue Mejia Diaz's detention is part of the Secretary of Homeland Security's decision to commence removal proceedings against him, and therefore his habeas petition is barred by § 1252(g), which strips courts of jurisdiction, including in habeas, "to hear any cause or claim by or on behalf of any alien *arising from the decision or action* by the Attorney General to *commence proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). ECF 19-1 at 8. Mejia Diaz responds that whether his mandatory detention is authorized is a separate issue from the three enumerated actions—commencing proceedings, adjudicating cases, and executing removal orders.

The Supreme Court has "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (quoting *Reno v. American-Arab Anti–Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). Instead, the scope of § 1252(g) is narrower; it applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders,'" and not the "many other decisions or actions that may be part of the deportation process—

6

such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *AADC*, 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)); *see also Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (concluding § 1252(g) did not deprive court of jurisdiction over habeas petition challenging mandatory detention under 8 U.S.C. § 1226(c)(1) because petition "did not ask the district court to block a decision to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter" and was limited to legality of "detention while the administrative process lasts," which could "be resolved without affecting pending proceedings.") (quotation marks omitted). Thus, the legality of Mejia Diaz's detention is a separate issue from the decision to commence removal proceedings against him—proceedings that may occur regardless of his custody status. This petition is not barred by § 1252(g).

*3. 8 U.S.C. § 1252(b)(9)*

Finally, Respondents argue this court lacks jurisdiction because of § 1252(b)(9), which provides, as relevant here, that "Judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section," and directs that any such petition for review must be filed directly in an appellate court. 8 U.S.C. § 1252(b)(2), (b)(9). Mejia Diaz argues Respondents' interpretation of § 1252(b)(9) contradicts the plurality decision in *Jennings v. Rodriguez*, which concluded § 1252(b)(9)

7

did not affect the Supreme Court's jurisdiction to decide the validity of 8 U.S.C. § 1226(c)'s mandatory detention provision during removal proceedings, raised in a habeas petition, and not in a petition for review from a final removal order. 583 U.S. 281, 292-93 (2018). The Supreme Court assumed that the decision to detain the noncitizen constituted an action taken to remove them from the United States, but the legal question concerning the validity of the detention statutes did not "arise from" the actions taken to remove them. *Id.* (brackets omitted). So, too, here. Whether Mejia Diaz is properly characterized under § 1225(b)(2) is a legal question that does not "arise from" the action to remove him from the United States. Section 1252(b)(9) does not affect jurisdiction.

## C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents also argue that Mejia Diaz should exhaust his administrative remedies before an Immigration Judge and the Board of Immigration Appeals before filing a habeas petition. "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* Congress has not mandated exhaustion for a noncitizen filing a § 2241 petition challenging his detention. *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). When determining whether to require administrative exhaustion, courts consider whether

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Id.* (quoting *Iddir v. INS,* 301 F.3d 492, 498 (7th Cir. 2002)).

Here, it is clear that requiring Mejia Diaz to exhaust his administrative remedies would be futile because the agency has predetermined the issue. Respondents here make clear that it is the administration's position that every noncitizen who is present in the United States without being admitted is subject to mandatory detention without a bond hearing, and the BIA has issued an opinion to that effect, *In re Yajure Hurtado*, 29 I&N Dec. 216, 255 (BIA 2025), which is binding on all immigration judges. *See* 8 C.F.R. § 1003.1(g)(1) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board . . . shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States."). Requiring Mejia Diaz to exhaust his administrative remedies before this court addresses the merits of his claim would unduly keep Mejia Diaz detained if the Respondents' interpretation of the statutory authority is incorrect. Exhaustion of administrative remedies is not required here.

### D. MERITS

Respondents argue the petition should be denied because § 1225(b)(2) applies uniformly to all "applicants for admission," a category that includes Mejia Diaz. Therefore, they continue, the statute requires that he remain detained during his removal proceedings. Mejia Diaz, on the other hand, argues that § 1225(b)(2) applies only to "an alien seeking admission," which does not include noncitizens who are apprehended in the interior, years after they entered the United States.

The place to begin is with the words of the statute. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). "[W]hen the statutory language is plain, [courts] must enforce it according to its terms." *Id.* Section 1225(b), in general, governs the "[i]nspection of applicants for admission," and is divided into two subsections. Subsection 1225(b)(1) allows for an expedited removal process applicable to a noncitizen "who is arriving in the United States" or who has been in the United States for less than two years without having been admitted or paroled, if that noncitizen is inadmissible for one of two reasons—using fraud or misrepresentation to obtain the necessary entry documents, 8 U.S.C. § 1182(a)(7), or not having the proper documents to enter the United States, 8 U.S.C. § 1182(a)(7).[3] Subsection 1225(b)(2) states, subject to exceptions not applicable here,

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2). Section 1229a is the full removal process, which allows a noncitizen more procedural rights than the expedited removal process described in § 1225(b)(1).

The phrase "applicant for admission" is defined in the statute as either "[a]n alien present in the United States who has not been admitted" or "[a]n alien . . . who

---

[3] If a noncitizen falls under § 1225(b)(1), then the expedited removal process allows an immigration officer to "order the alien removed from the United States without further hearing or review," unless the noncitizen indicates an intent to apply for asylum or a fear of persecution if removed. In that case, the noncitizen is not removed immediately, but is detained while the claim for asylum or fear of persecution is decided. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

10

arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). Thus, Mejia Diaz is properly designated as an "applicant for admission" because he is present in the United States without being admitted.

Respondents argue that is enough; all noncitizens who meet the definition of applicant for admission are subject to mandatory detention under § 1225(b)(2) while their removal proceedings are pending. Therefore, the statute requires that they be detained without the opportunity to seek bond. Mejia Diaz looks to later in that subsection and argues the phrase "seeking admission" in § 1225(b)(2) demonstrates that the subsection applies to people arriving at the border, and not to those apprehended in the interior, years after arrival. Respondents counter that the phrase "seeking admission" has no independent meaning and simply is another way of referring to noncitizens who are applicants for admission.

Here, however, Congress chose to refer in § 1225(b)(2) to "*an* alien seeking admission," and not "*the* alien seeking admission." (emphasis added). "[G]rammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" *Nielsen v. Preap*, 586 U.S. 392, 408 (2019) (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005)) (alteration in original). Therefore, the court cannot presume that "an alien seeking admission" refers back to the previously specified "applicant for admission." Rather, the use of "an" implies a narrowing of which "applicants for admission" are subject to the terms of § 1225(b)(2).

11

Further, Respondents overlook that "admission" is separately defined in the INA: "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A). Thus, an alien who is "seeking admission" is one who is seeking "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* While that construction may include an "applicant for admission" who "arrives in the United States," it would not include an "applicant for admission," like Mejia Diaz, who is "present in the United States who has not been admitted." 8 U.S.C. § 1225(b)(1).

Adding to this interpretation is the fact that Congress chose to use the word "seeking" in § 1225(b)(2), implying some sort of present tense action is occurring. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir. 2019) (quoting Bryan A. Garner, Garner's Modern American Usage 1020 (4th ed. 2016)) (noting a present participle is "[a] nonfinite verb form ending in -ing and used in verb phrases to signal the progressive aspect."). "[T]he Supreme Court does not consider grammar a mere technicality. It has stated that 'Congress' use of a verb tense is significant in construing statutes.'" *United States v. Balint*, 201 F.3d 928, 933 (7th Cir. 2000) (quoting *United States v. Wilson*, 503 U.S. 329, 333 (1992)). "Seeking" is, itself, undefined in the INA, but the plain, ordinary meaning of "seek" means "ask for" or "try to acquire or gain." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seek (last visited Dec. 16, 2025). "In the absence of statutory definitions, [courts] accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless,

12

redundant, or superfluous; [courts] view words not in isolation but in the context of the terms that surround them." *Commodity Futures Trading Comm'n v. Worth Bullion Grp., Inc.*, 717 F.3d 545, 550 (7th Cir. 2013) (cleaned up). This further supports the interpretation that the mandatory detention provision in § 1225(b)(2) applies to those applicants for admission who are currently asking for a lawful entry into the United States after inspection and authorization by an immigration officer, i.e., those who are presenting themselves for admission at the border.

Respondents attempt to explain this away by arguing Mejia Diaz is in a constant state of "seeking admission" by virtue of his unlawful entry. But if "applicant for admission" and "seeking admission" are synonymous, then that would make the phrase "seeking admission" in § 1252(b)(2) superfluous. The statute would have the same meaning if those words were omitted:

> in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien* . . . is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2). In order to give meaning to every word in the statute, "seeking admission" must mean something different than "applicant for admission" and serves to clarify which "applicant for admission" this subsection applies to.

Respondents argue that other uses of "applicant for admission" in § 1225 support their interpretation that "seeking admission" is another way of saying "applicant for admission." Specifically, they point to § 1225(a)(3), which states, "All aliens (including alien crewmen) who are *applicants for admission or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration

13

officers." 8 U.S.C. § 1225(a)(3) (emphasis added). They argue that the phrase "otherwise seeking admission," after "applicants for admission" implies that all applicants for admission are seen as seeking admission in some way. ECF 19-1 at 16. However, the court reads it differently. The phrase "otherwise seeking admission" allows that people other than an "applicant for admission" may still be subject to inspection by immigration officers. *See, e.g.*, 8 U.S.C. § 1101(a)(13)(C) (describing the conditions when a lawful permanent resident is "regarded as seeking an admission into the United States").

Finally, the history of the INA explains the seeming incongruity of drafting a broad definition of "applicant for admission," to encompass all noncitizens present without admission in the United States, in a section dealing primarily with interactions at the border. The term "applicant for admission" was added to the Immigration and Naturalization Act ("INA") in the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). *See* OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009. Before IIRIRA, a noncitizen found in the United States who entered without inspection was deportable and placed in deportation proceedings. 8 U.S.C. § 1251(a)(1) (1996). In a deportation hearing, the government bore the burden of proof to provide "clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 286 (1966). By contrast, a noncitizen outside the United States seeking entry was subject to exclusion

14

proceedings, where the noncitizen bore the burden at the exclusion hearing to establish that he was entitled to be admitted into the United States. 8 U.S.C. § 1225(b) (1996).

Thus, whether a non-admitted noncitizen was subject to an exclusion hearing or the more favorable deportation hearing depended on whether the noncitizen was apprehended in the interior of the United States or at the border. *See generally Landon v. Plasencia*, 459 U.S. 21, 25-29 (1982) (discussing differences between exclusion hearings and deportation hearings). IIRIRA placed all non-admitted noncitizens, whether located at the border or within the United States, on the same legal footing in their removal proceedings; both are considered applicants for admission who are inadmissible and therefore bear the burden to prove their entitlement to be admitted. 8 U.S.C. § 1225(a)(1) (applicant for admission); § 1182(a)(6)(A)(i) (deeming inadmissible an alien present within the United States without being admitted or paroled). Congress has broad authority to prescribe the procedures applicable to immigration proceedings—that is, who may and may not be admitted to the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020). An unlawful entry, however, does not strip a person within the United States of the Constitution's protection from freedom from imprisonment without due process. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). And Congress was cognizant of that when it placed all non-admitted noncitizens on the same footing, procedurally, but maintained a distinction, for custody purposes,

15

between noncitizens who had entered the United States and those who were outside of its borders.

This conclusion regarding the non-applicability of § 1225(b)(2) to noncitizens, like Mejia Diaz, who were apprehended in the interior of the United States years after their unlawful entry, is in line with the hundreds of cases that have come to the same conclusion. *See Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (noting this position has been adopted "either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States" with about a dozen cases going the other way). Moreover, the Seventh Circuit concluded when deciding an application for a stay pending appeal that the government was not likely to succeed on the merits of their argument that the mandatory detention provision § 1225(b)(2)(A) applies to the plaintiffs there, who were noncitizens who had not been admitted and who were arrested by ICE without a warrant in the interior of the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, -- F.4th __, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025).

### E. REMEDY

Mejia Diaz, thus, has shown that his detention is not authorized by § 1225(b)(2). The question then becomes what is the proper remedy. The other provision the parties cite as a basis for a noncitizen's detention while removal proceedings are pending is 8 U.S.C. § 1226(a), which provides, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be

16

removed from the United States." However, neither party discusses the fact that Mejia Diaz was *already* arrested and released on an Order of Recognizance back in 2011. ECF 19-2 at 3. An Order of Recognizance is a form of conditional parole, allowed by § 1226(a)(2)(B). *See In re of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance pursuant to DHS' conditional parole authority under . . . 8 U.S.C. § 1226(a)(2)(B)[.]"); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a).").

The Attorney General has broad discretion to revoke parole. The statute states, "The Attorney General *at any time* may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b) (emphasis added). The regulations specify which people may exercise the Attorney General's discretion:

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9); 8 C.F.R. § 1236.1(c)(9). There is no evidence in the record that Mejia Diaz's parole was ever revoked. Instead, Respondents provide an administrative arrest warrant dated November 11, 2025, and signed by SDDO Raven. ECF 19-2 at 3. An SDDO, a Supervisory Detention and Deportation Officer, is not among the people given the authority to revoke parole. *See Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *4 (W.D. Wash. Oct. 7, 2025) (citing *United States v. Gemmill*,

17

535 F.2d 1145, 1152 (9th Cir. 1976) (noting only listed officials may exercise revocation authority)). Therefore, Mejia Diaz was arrested and detained despite the existence of conditional parole that has not been revoked. The government has the authority to revoke Mejia Diaz's parole, but it did not exercise that authority. Instead, the government relied on the invalid theory that Mejia Diaz is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." There is no statutory basis to keep him detained.

### F. CONCLUSION

Accordingly, the court **GRANTS** the petition for a writ of habeas corpus to the extent that Respondents are **ORDERED** to release Carlos Mejia Diaz immediately from custody under the same conditions that existed before his detention and to certify compliance with this order by a filing a notice with the court by **December 17, 2025**, detailing when Mejia Diaz was released. The clerk is **DIRECTED** to enter judgment. The clerk is further **DIRECTED** to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction. This case will be closed after the notice of compliance is filed. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED on December 16, 2025.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT